### A08A0225. SIMMONS v. THE STATE.
(662 SE2d 660)

RUFFIN, Presiding Judge.

A Dougherty County jury found Larry Simmons guilty of two counts of child molestation. Simmons appeals, challenging the sufficiency of the evidence and arguing that the trial court erred in admitting certain testimony under OCGA § 24-3-16, Georgia's Child Hearsay Statute. For reasons that follow, we affirm.

Viewed in a light favorable to the jury's verdict,[1] the evidence shows that in 2002 Simmons lived with his girlfriend, Lisa Hamilton, and her four children. In May 2002, one of Hamilton's daughters, L. S., who was ten years old, told her mother that Simmons was "messing with her" and "trying to do grownup things with her." Hamilton and several of her family members confronted Simmons, who denied any such conduct. The same week, L. S. twice told Hamilton about incidents with Simmons. First, L. S. stated that Simmons had taken her into Hamilton's bedroom and tried to penetrate her sexually. They were interrupted by L. S.'s twin brother, K. S. Later that week, L. S. told Hamilton that Simmons "was still trying to mess with her." Hamilton testified that she did not go to the police immediately because she was afraid her children would be taken from her and was "trying to make sure that [she] was going to do the right thing."

---

K. S. confirmed at trial that he saw Simmons in his mother's bedroom with L. S. As K. S. entered the room, L. S. was pulling up her underwear and Simmons rolled off the bed. K. S. told Hamilton what he had seen as soon as she got home from work that day. He later told his uncle, Patrick Jenkins, Hamilton's brother. L. S.'s younger sister also testified that Simmons came into the bedroom she shared with L. S. and got into bed with L. S., telling her to "get right."

Jenkins testified that L. S. told him Simmons offered her money to expose herself to him. Jenkins confronted Simmons, who denied it. Jenkins and other family members ordered Simmons to move out of Hamilton's house. Several months later, when Simmons had not moved, Jenkins contacted police. On October 2, 2002, Jenkins and his wife spoke to Officer Covington and took him to Hamilton's house. Officer Covington talked to L. S., who indicated that she knew the difference between good and bad touches and that Simmons had touched her in a bad way. Officer Covington then turned the interview of L. S. over to a female officer, Corporal Jackson. L. S. told Corporal Jackson that Simmons got into bed with her, climbed on top of her, and told her to "get right." L. S. said that Simmons had sex with her; when Corporal Jackson asked if his penis was in her vagina, she said "yes."

Simmons was taken to the police station that night and questioned by Officer Hudson. Simmons made a statement admitting that he placed his penis on L. S.'s thigh and vagina and that her brother came into the room and caught them. Simmons also gave a written statement to that effect. Simmons told Officer Hudson that he asked to see L. S.'s "private parts" and that he had tried to penetrate her but "it [would not] fit." At trial, Simmons recanted his statements. While he was in jail awaiting trial, Simmons wrote Hamilton that "I am going to be totally different whenever I do get out, because this was a close call."

On October 3, 2002, Joyce Johnson, a trained child forensic interviewer, interviewed L. S. The interview was videotaped, and it was played for the jury at trial. Johnson testified that in the interview L. S. identified six separate instances of sexually inappropriate behavior by Simmons. In one episode, Simmons took L. S. into the bedroom, pulled down her underwear and tried unsuccessfully to penetrate her. Simmons stopped when her brother, K. S., came into the room. L. S. also reported that Simmons came into her bedroom, got into bed with her, told her to "get right," and tried to have sex with her. Johnson stated that L. S. gave specific details about the incidents and corrected Johnson if she misunderstood any details. L. S. testified at trial and identified Simmons as the person who

touched her sexually, placed his penis on her, and attempted to penetrate her.

1. Simmons argues that the trial court erred in permitting Hamilton, Jenkins, Officer Covington, and Corporal Jackson to testify about statements L. S. made to them. Under OCGA § 24-3-16, Georgia's Child Hearsay Statute, a person may testify as to a statement made to them by a child under 14 about sexual contact or physical abuse performed with or on the child "if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability." A trial court has broad discretion to determine the admissibility of such evidence, and we will not reverse its ruling absent an abuse of discretion.[2]

We have identified ten factors for the court to consider in determining whether the circumstances of a child's statement provide sufficient indicia of reliability:

> (1) the atmosphere in which the statement is made; (2) the spontaneity of the statement; (3) the age of the child; (4) the child's general demeanor; (5) the child's physical or emotional condition; (6) any threats or promises made to the child; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) any coaching by parents or other parties; and (10) the consistency between repeated out-of-court statements by the child.[3]

"These factors are not to be applied in mechanical or mathematical fashion, but in that manner best calculated to facilitate determination of the existence or absence of the requisite degree of trustworthiness."[4] In the present case, Simmons contends that the statements were unreliable because: L. S. did not say exactly when the incidents occurred, only that they took place between May and October; there was no evidence that L. S. exhibited psychological or physical problems associated with sexual abuse; Hamilton and Jenkins did not immediately contact police; and the statements given were inconsistent. We disagree.

The statements to which Simmons objects were made spontaneously, without any threats or coercion. And, contrary to Simmons's assertion, L. S.'s statements were remarkably consistent and corroborated at trial by the testimony of her siblings, her videotaped interview, and Simmons's confession. L. S. was able to provide details

---

[2] See *Nelson v. State*, 279 Ga. App. 859, 861 (1) (a) (632 SE2d 749) (2006).

[3] Id. at 861-862.

[4] (Punctuation omitted.) *Krirat v. State*, 286 Ga. App. 650, 655 (2) (649 SE2d 786) (2007).

about when the incidents occurred, although she could not give specific dates. There was no evidence regarding any psychological or physical problems suffered by L. S. as a result of the abuse; the topic was not raised at trial. We also question whether the fact that Hamilton and Jenkins did not immediately contact police may be considered as a factor in the reliability of L. S.'s statements. At most, this is evidence they did not believe L. S. was credible. But both Hamilton and Jenkins testified at trial that their delay in contacting police was for other reasons — Hamilton delayed because she feared losing her children, and Jenkins delayed because he thought Simmons was leaving the home. Moreover, L. S. herself testified at trial. Under these circumstances, the trial court did not abuse its discretion in admitting the statements under the Child Hearsay Statute.[5]

2. Simmons also challenges the sufficiency of the evidence, arguing that there was no physical evidence to corroborate the allegations, that the State did not show that L. S. suffered psychological injury, and that some witnesses had a motive to fabricate the allegations against him. It was for the jury to decide, however, how to weigh these factors against the testimony of multiple witnesses, including L. S., and Simmons's own inculpatory statements to police.[6] " 'As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.' "[7] The testimony of the victim alone may support a conviction for child molestation, even in the absence of any physical evidence.[8] And "[g]iven that the allegations against [Simmons] did not include penetration, the lack of medical evidence to corroborate the victim's molestation is in no way exculpatory."[9] Accordingly, there was sufficient evidence to support the jury's verdict.[10]

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

DECIDED MAY 22, 2008.

*Agis R. Bray III*, for appellant.

---

[5] See id. at 656; *Nelson*, supra at 862-863.

[6] See *Tadic v. State*, 281 Ga. App. 58, 59-60 (2) (635 SE2d 356) (2006).

[7] *Abernathy v. State*, 278 Ga. App. 574, 579 (2) (630 SE2d 421) (2006).

[8] See *Hutchinson v. State*, 287 Ga. App. 415, 418 (651 SE2d 523) (2007).

[9] (Punctuation omitted.) *Tadic*, supra.

[10] See id.; *Hutchinson*, supra.

YALE LAW LIBRARY

*Kenneth B. Hodges III, District Attorney, Shelly D. Faulk, Assistant District Attorney,* for appellee.