## S09A0511. ASHE v. THE STATE.
(676 SE2d 194)

BENHAM, Justice.

Quenton Burks was killed by a single gunshot wound to the head on December 20, 2005, and appellant Willie Anthony Ashe and his son, Antony Ramsey Smith, were convicted of malice murder and possession of a weapon during the commission of a crime.[1] Ashe brings this appeal in which he seeks reversal of the judgment of

---

[1] Appellant and his son were arrested on December 22, 2005, and the Clayton County grand jury returned a true bill of indictment in August 2006, charging appellant and his son with malice murder, three counts of felony murder, four counts of aggravated assault against the victim, burglary, armed robbery, and possession of a firearm during the commission of a crime. Each defendant was charged in separate counts with use of a firearm by a convicted felon. The case was tried before a jury April 14-21, 2008, and concluded with verdicts finding appellant guilty of the four murder charges, three of the aggravated assault charges, the burglary charge, and possession of a firearm during the commission of a crime. The remaining charges had been dismissed prior to trial, at the request of the prosecution. After the felony murder convictions were vacated by operation of law (OCGA § 16-1-7) and the several felony convictions were deemed merged by the trial court, appellant was sentenced on April 22, 2008, to life imprisonment for the malice murder conviction and to a concurrent five-year term of years for possession of a weapon during the commission of a crime. Appellant filed a timely notice of appeal on April 29, 2008, and the appeal was docketed in this Court on December 17, 2008. It was submitted for decision on the briefs.

conviction entered against him on the grounds that his motion to suppress should have been granted and the evidence presented by the State was not sufficient to support the guilty verdict returned on the malice murder charge.

1. The victim's fiancée testified that the victim left the apartment he shared with the witness and her three-year-old daughter in response to a knock at the door at about 9:15 p.m. on December 20, 2005. The witness heard yelling outside the apartment before the victim returned to the apartment, followed by appellant and the co-defendant. In the apartment, the victim pointed a gun at appellant and the co-defendant and demanded that they leave. As the two left, one said "This ain't over yet." About an hour later that night, knocking on the door awakened the witness who approached the door and inquired who it was. She was given the name of a friend of the victim and she opened the door to find appellant, who stuck his foot in the doorway so the witness could not close the door and then pushed his way into the apartment. The witness exited the apartment and saw the co-defendant standing outside, armed with a cocked gun. The co-defendant entered the apartment and locked the door, leaving the witness outside. She went to get assistance from a neighbor and heard a shot. She chased a fleeing man until he got into a moving maroon pickup truck. In a photographic lineup, the witness identified appellant as the man for whom she opened the apartment door and the co-defendant as the man armed with a cocked gun. A neighbor of the victim identified the co-defendant as one of the two men fleeing the apartment building after a shot was fired. A pickup truck matching the description of the fleeing vehicle was found in appellant's garage. The co-defendant testified that his gun fired a bullet that struck the victim when the victim swung at the gun the co-defendant was pointing at him and hit the co-defendant's hand. The co-defendant denied pulling the trigger of his gun; however, a ballistics expert testified he had never known the types of gun[2] that could have fired the fatal shot to fire without the trigger having been pulled.

The evidence was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that appellant was guilty of malice murder as a party to the crime since he twice accompanied his son to the victim's apartment, lied to gain entry for himself and the co-defendant to the victim's apartment, was present when the victim sustained a fatal gunshot wound fired by the co-defendant's gun

---

[2] The murder weapon was not recovered; however, after examining the bullet removed from the victim, the ballistics expert identified several gun models that could have fired the fatal shot.

while the co-defendant was pointing it at the victim, and fled the scene after the shot was fired. OCGA § 16-2-20 (b) (3) (a person is a party to a crime if the person "[i]ntentionally aids or abets in the commission of the crime"). *Carr v. State*, 282 Ga. 698 (1) (653 SE2d 472) (2007). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred when it denied his motion to suppress a videotaped statement he made shortly after he was arrested and informed of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). In order to be successful, an enumeration of error requires a showing of both harm and error. *Davis v. State*, 235 Ga. App. 10 (2) (507 SE2d 827) (1998). The content of appellant's post-arrest, post-*Miranda* statement was not admitted into evidence.[3] Since appellant has not demonstrated any harm suffered by him as a result of the trial court's denial of his motion to suppress, he has presented no basis for reversal of his conviction. *Cheatham v. State*, 204 Ga. App. 483 (2) (419 SE2d 920) (1992).

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 28, 2009.

*Patricia F. Angeli*, for appellant.

*Tracy G. Lawson, District Attorney, Kimberly R. Bourroughs, Assistant District Attorney, Thurbert E. Baker, Attorney General, Amy E. Hawkins Morelli, Assistant Attorney General*, for appellee.

---

[3] At trial, the investigating detective testified during the State's case-in-chief to the contents of the statement made by the co-defendant; the co-defendant then testified in his defense; and, on cross-examination of the co-defendant following the trial court's ruling prohibiting any testimony as to what appellant said, the co-defendant testified about some of the incriminating remarks he had made to appellant during a post-arrest, post-*Miranda* videotaped conversation between appellant and the co-defendant.