682 S.E.2d 359 (2009)
299 Ga. App. 253
BARNES
v.
The STATE.
No. A09A1180.
Court of Appeals of Georgia.
July 17, 2009.
*360 Scott J. Forster, Calhoun, for appellant.
T. Joseph Campbell, Dist. Atty., Richard A. Hull, Asst. Dist. Atty., for appellee.
MIKELL, Judge.
After a jury trial, George Barnes was convicted of one count of aggravated child molestation and five counts of child molestation. Barnes was sentenced to 30 years, 15 to serve in prison and the remaining 15 on probation. On appeal, Barnes argues that his trial counsel was ineffective and challenges the sufficiency of the evidence. We affirm.
On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence. This Court does not weigh the evidence or determine witness credibility, but only determines whether the evidence, viewed in the light most favorable to the jury's verdict, is sufficient under Jackson v. Virginia.[1] We uphold the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]
Viewed in favor of the verdict, the records shows that Barnes was charged with sexually molesting his two stepdaughters, R.W. and L.A.W., over a time span of approximately five years. Both victims, who were under the age of 16 at the time of the incidents, testified at trial.
L.A.W., who was 19 years old at the time of trial, testified that she was 13 or 14 years old when the abuse began; that Barnes offered to bathe her but told her not to tell her mother; that Barnes touched her breast and vaginal area when he came into her room to wake her up for school; and that she told a teacher about the incidents, but no one believed her. After some time passed, Barnes resumed the abuse, touching L.A.W. inappropriately on the outside of her clothes when he came into her room in the mornings. L.A.W. testified that she and Barnes began to argue regularly and that she started staying away from home, living with her father and friends to avoid Barnes. L.A.W. maintained that she did not know that Barnes was molesting her younger sister, R.W.
R.W. testified that during the day, she and Barnes got along well and that he gave her money to go places. On the nights that L.A.W. was not there, however, Barnes would come to her room and touch her breasts, her vagina, and her bottom. R.W. recalled that on one occasion, she woke up and Barnes's mouth was on her vagina. She told her mother about the incidents about three weeks after the oral sex occurred. The police were called, and Barnes was arrested.
Jessica Dobash, who was an investigator with the Gordon County Sheriff's Office at the time in question, testified that she met with R.W., L.A.W., and their mother on the day after the initial report was made. Dobash recorded her interview of R.W., and the videotape was played for the jury.
Barnes testified at trial, denying that he ever touched L.A.W. or R.W. inappropriately. Barnes testified that he regularly argued with L.A.W. but gave R.W. preferential treatment because she helped out with the younger children. Barnes admitted that he once spoke to R.W. about a man that he thought was too old for her. After the incidents were reported, Barnes testified that he received a text message from L.A.W., in which she apologized and wrote that she did not think he was guilty and did not want him to go to prison. Barnes also offered the testimony of several witnesses who testified to his good character and about their observations of Barnes with his family. One witness, Anthony Robinson, testified that he had seen L.A.W.'s text message to Barnes. Another witness, Ken Franklin, who worked with Barnes for two years, testified that R.W. had a crush on him and that R.W. and a friend of hers told him that they were going to "bang [his] brains out."
1. We address first Barnes's challenge to the sufficiency of the evidence. A person who does any immoral or indecent act to or with a child under the age of 16 years with the intent to arouse or satisfy his own or the child's sexual desires commits child *361 molestation.[3] "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy."[4] Barnes argues that the evidence was insufficient because there was no physical evidence of sexual abuse, but "Georgia law does not require corroboration of a child molestation victim's testimony."[5] The testimony of the victims, alone, supports Barnes's convictions, despite the absence of any physical evidence.[6] Barnes also contends that the evidence was insufficient because there was no testimony from witnesses who were not motivated to lie. As stated earlier, however, we do not weigh the evidence or determine witness credibility because conflicts or inconsistencies that arise in the evidence are for the jury to resolve.[7] "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, [an appellate court] must uphold the jury's verdict."[8] Based on the testimony of R.W. and L.A.W., the evidence was sufficient to convict Barnes of the charged offenses.[9]
2. Barnes argues that his trial counsel was ineffective because she failed to impeach R.W.'s testimony that she was not sexually active. We find no error.
The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. There are two components to the inquiry: First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. The Strickland[10] Court set forth the appropriate test for determining prejudice: The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.[11]
In the instant case, R.W. was asked during her videotaped interview if she had ever had sex, and she replied that she had not.[12] At the hearing on Barnes's motion for new trial, his 14-year-old first cousin testified that she had had conversations with R.W. wherein R.W. commented that she needed a refill of her birth control pills and that she had sexual "skills." Barnes's 17-year-old son, who was a year younger than R.W., testified that he had sex with R.W. when he was eight or nine years old. Barnes argues that trial *362 counsel should have utilized these witnesses to impeach R.W.'s statement.
When asked about this line of questioning, trial counsel testified that she chose not to attack R.W. directly because she thought that it was dangerous to do so and was concerned that the jury may have held her harshness against her client. However, she pointed out that she introduced evidence of this nature when she called Franklin, Barnes's former co-worker, to testify about R.W.'s inappropriate sexual comments to him. "The decision as to which defense witnesses will be called is a matter of trial strategy and tactics,"[13] and "[s]ubstantial latitude is given during judicial review of trial counsel's decisions regarding trial strategy."[14] We do not find that counsel's strategic decision amounted to deficient performance.[15]
Had we concluded that the failure to call these witnesses at trial amounted to deficient performance, we do not find that Barnes has shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[16] As the trial court pointed out, despite potential attacks on R.W.'s credibility, there were two victims here, and Barnes was found guilty of molesting both victims. Evidence was introduced that attacked the credibility of both victims. Independent witness Robinson testified that he saw a text message from L.A.W. to Barnes in which she apologized and said she did not think he was guilty, and as stated earlier, Franklin testified about inappropriate sexual comments that R.W. made to him when she was a young teenager. In spite of this evidence, the jury chose to believe the victims' testimony. Accordingly, we find no abuse of discretion in the trial court's decision to deny Barnes's ineffective assistance of counsel claim.
Judgment affirmed.
JOHNSON, P.J., and ELLINGTON, J., concur.
NOTES
[1] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)
[2] (Footnotes omitted.) Nguyen v. State, 294 Ga. App. 67-68, 668 S.E.2d 514 (2008).
[3] OCGA § 16-6-4(a).
[4] OCGA § 16-6-4(c).
[5] (Footnote omitted.) Keith v. State, 279 Ga.App. 819, 821(2), 632 S.E.2d 669 (2006).
[6] See Simmons v. State, 291 Ga.App. 642, 645(2), 662 S.E.2d 660 (2008) (where there is no allegation of penetration, the lack of corroborating medical evidence is not exculpatory); Davis v. State, 221 Ga.App. 131, 132(1), 470 S.E.2d 520 (1996) (where there were no physical findings to corroborate allegation of rape and evidence of guilt was not overwhelming, conviction affirmed because victim's testimony, alone, was sufficient to prove defendant's guilt).
[7] Rankin v. State, 278 Ga. 704, 705, 606 S.E.2d 269 (2004).
[8] (Citation omitted.) Id.
[9] See Jackson v. Virginia, supra.
[10] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[11] (Citations and punctuation omitted.) Miller v. State, 285 Ga. 285, 285-286, 676 S.E.2d 173 (2009).
[12] The transcript of the videotape is not included in the record, but the state and defense filed a stipulation to this fact.
[13] (Punctuation and footnote omitted.) Robbins v. State, 290 Ga.App. 323, 332(4)(e), 659 S.E.2d 628 (2008).
[14] (Citation and punctuation omitted.) Johnson v. State, 280 Ga.App. 341, 344(3)(c), 634 S.E.2d 134 (2006). See also Creed v. State, 255 Ga.App. 425, 431(3)(a), 565 S.E.2d 480 (2002) ("[c]ounsel's decisions on matters of tactic and strategy, even if unwise, do not amount to ineffective assistance of counsel") (citations and punctuation omitted).
[15] See generally Eller v. State, 294 Ga.App. 77, 82-83(4)(e), 668 S.E.2d 755 (2008) (counsel's decision not to attack victim with her criminal history was strategic).
[16] Miller, supra.