## A09A1810. LYNN v. THE STATE.

(684 SE2d 325)

BLACKBURN, Presiding Judge.

Following a jury trial, James Lynn was convicted on a single count each of aggravated child molestation[1] and child molestation.[2] He now appeals from the denial of his motion for a new trial, asserting that the trial court erred in: (1) admitting certain similar transaction evidence and (2) allowing into evidence a videotaped, forensic interview of the victim. Discerning no error, we affirm.

Viewed in the light most favorable to the verdict, *Drammeh v. State*,[3] the record shows that Lynn was convicted of molesting his former stepdaughter by fondling and placing his mouth on her genitals on several occasions between May and September of 2006. At the time of these incidents, the stepdaughter was between ten and eleven years old.

During its case, the State presented the testimony of one of Lynn's ex-girlfriends and her daughter regarding Lynn's molestation of the daughter. Specifically, these witnesses testified that Lynn and the former girlfriend had dated for approximately seven to eight years and that, during that time, Lynn resided part-time at the girlfriend's home. In January 2007, Lynn spent the night at the girlfriend's residence, with Lynn and the girlfriend sleeping in the living room with the girlfriend's daughter and son. The daughter, O. W., was 14 years old at the time and woke up when she felt someone lying on top of her. O. W.'s pants and underwear were pulled down, and someone she described as a "tall person with hairy legs" was lying on top of her, rubbing his private part on her thigh. O. W. assumed her assailant was Lynn, because the only other people in the residence were her mother and younger brother, whom she could see sleeping at the time of the incident.

The State also introduced into evidence and played for the jury a videotaped forensic interview of the victim in the current case, regarding Lynn's molestation of her. Prior to the introduction of that videotape, the trial court held an evidentiary hearing, and found that the interview had sufficient indicia of reliability to permit its introduction into evidence.

Following his conviction, Lynn filed a motion for a new trial. The trial court denied that motion, and this appeal followed.

1. Lynn first argues that the trial court erred in admitting the similar transaction testimony regarding his molestation of O. W. We

---

[1] OCGA § 16-6-4 (c).

[2] OCGA § 16-6-4 (a) (1).

[3] *Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007).

disagree.

Before being allowed to introduce evidence of a similar transaction involving a defendant, the State must affirmatively show: (1) a proper purpose for the use of the evidence; (2) sufficient proof that the defendant committed the independent act; and (3) that the two incidents are similar enough that proof of the former tends to prove the latter. *Hostetler v. State.*[4] "Absent an abuse of discretion, a trial court's ruling as to the admissibility of similar transaction evidence will not be disturbed." (Punctuation omitted.) Id.

On appeal, Lynn challenges the State's showing only as to the third factor, arguing that the State failed to establish the requisite degree of similarity between the previous incident and the conduct charged. Specifically, Lynn claims that the lewd act he performed on O. W. was too dissimilar to the acts of molestation he performed on the victim in this case. This argument is without merit.

> The issue of admissibility of extrinsic transactions has never been one of mere similarity. It is, rather, relevance to the issues in the trial of the case. In this regard, the exception to the general rule that evidence of independent crimes is inadmissible has been most liberally extended in the area of sexual offenses. And, the sexual abuse of young children, regardless of the sex of the victims or the nomenclature or type of acts (or other conduct) perpetrated upon them, is of sufficient similarity to make the evidence admissible. The reason for this rule rests not only in the legal difficulty encountered with a child victim . . . but because a sexual offense committed against a young child requires a special lascivious motivation or bent of mind which generally will have some probative value in determining an accused's motivation or bent of mind in a subsequent trial for child molestation.

(Citations and punctuation omitted.) *Swift v. State.*[5] See also *Mikell v. State*[6] ("[i]n cases of sexual abuse of children, evidence of prior sexual acts performed on other children is admissible to show the lustful disposition of the defendant toward children, and, because there is seldom a competent witness other than the victim to what occurred, to corroborate testimony of the victim as to the acts

---

[4] *Hostetler v. State*, 261 Ga. App. 237, 238 (1) (582 SE2d 197) (2003).
[5] *Swift v. State*, 229 Ga. App. 772, 774-775 (2) (d) (495 SE2d 109) (1997).
[6] *Mikell v. State*, 281 Ga. App. 739, 742 (2) (637 SE2d 142) (2006).

charged") (punctuation omitted); *Myrick v. State.*[7]

As with the conduct charged below, the similar transaction at issue involved the daughter of one of Lynn's romantic partners and occurred in the girl's home, where Lynn resided on a part-time basis. Additionally, in each incident, Lynn removed or manipulated the girl's clothing so as to expose her genitals. The fact that the resulting physical contact between Lynn and each of the victims was not identical "does not render the incidents insufficiently similar. There is no requirement that the prior crime or transaction be absolutely identical in every respect." (Punctuation omitted.) *Hostetler*, supra, 261 Ga. App. at 239 (1) (finding sufficient similarity between prior incidents where defendant merely exposed himself to children and the acts of molestation charged). See also *Lewis v. State*[8] (finding sufficient similarity between incidents where defendant became sexually aroused by having his adolescent daughter sitting on his lap and by giving her back rubs, and the conduct charged, which included the defendant fondling, sodomizing, and raping his adolescent stepdaughter). Thus, the "[e]vidence support[ed] the trial court's findings that [Lynn's] earlier lewd act upon [O. W. was] sufficiently similar to the acts for which he was charged here and were appropriate for showing his lustful disposition and bent of mind toward molesting young girls." *Mikell*, supra, 281 Ga. App. at 743 (2). "Accordingly, the trial court did not abuse its discretion in admitting the similar transaction[ ] into evidence." Id.

2. Lynn also asserts that the trial court erred in admitting into evidence a videotaped, forensic interview of the victim. Neither the original nor a copy of the videotaped interview was included in the record received by this Court from the trial court. The record does not reflect that the trial court designated a custodian of the evidence or that any evidence log was maintained. During a criminal trial, OCGA § 17-5-55 requires that the trial court designate either the clerk of court, the court reporter, or any other officer of the court to serve as the custodian of any physical evidence introduced during the trial, which evidence is to be tagged or marked. The trial custodian is required to inventory the trial evidence and to create an evidence log within 30 days after the verdict and entry of judgment. After the evidence log is completed, the trial judge is required to then designate either: (a) the clerk of the court; (b) the prosecuting attorney; or (c) the law enforcement agency involved in prosecuting the case to obtain and store the evidence. A notation must be made in the evidence log indicating a transfer of custodian to the succeed-

[7] *Myrick v. State*, 242 Ga. App. 892, 894 (1) (531 SE2d 766) (2000).

[8] *Lewis v. State*, 275 Ga. App. 41, 43 (2) (b) (619 SE2d 699) (2005).

ing custodian. The signature of any person or entity to which any evidence is transferred is required to be captured electronically and filed with the evidence log. A photograph of any transferred physical evidence other than video and audio tapes must be made and placed in the case file. No copy of the videotape at issue was included in the record on appeal, and no compliance with OCGA § 17-5-55 is indicated in the record here.

We note that when it appears that photographs or audio or video recordings might be needed on appeal by a party, such party should move the trial court to allow duplicates to be admitted into the record in addition to the originals and be retained by the clerk of the court for inclusion in any appellate record. The trial court should include in its order instructions that the clerk of court include such copies in the appellate record transmitted to this Court, where the appealing party either requests their inclusion or requests that nothing be omitted from the record on appeal. Such a practice would ensure the completeness of the appellate record without delay.

In this particular case, we are able to address Lynn's claim of error, even in the absence of the tape itself, because his argument on this issue is premised on the assertion that the victim lacked credibility. The victim, however, testified at trial and was subject to cross-examination by Lynn, thereby "giving the jury the opportunity to judge her demeanor and credibility during that examination." *Phillips v. State*.[9] Under such circumstances, this Court does not review the credibility of witnesses because, "[p]ursuant to OCGA § 24-9-80, credibility is a matter solely within the province of a jury." *Hutchinson v. State*.[10] We now turn to the merits of Lynn's claim.

Under OCGA § 24-3-16, Georgia's Child Hearsay Statute, the out-of-court statements of a child under the age of 14 about sexual contact or physical abuse performed with or on the child are admissible in evidence "if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability." "A trial court has broad discretion to determine the admissibility of such evidence, and we will not reverse its ruling absent an abuse of discretion." *Simmons v. State*.[11]

> Under our decision in *Gregg* [*v. State*[12]], some of the factors a court may consider when determining whether an out-of-

---

[9] *Phillips v. State*, 284 Ga. App. 224, 228 (1) (b) (644 SE2d 153) (2007).

[10] *Hutchinson v. State*, 287 Ga. App. 415, 417 (651 SE2d 523) (2007).

[11] *Simmons v. State*, 291 Ga. App. 642, 644 (1) (662 SE2d 660) (2008).

[12] *Gregg v. State*, 201 Ga. App. 238, 240 (3) (a) (411 SE2d 65) (1991).

court statement has sufficient indicia of reliability include, but are not limited to, the following: (1) the atmosphere and circumstances under which the statement *was made* (including the time, the place, and the people present . . .); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child. However, these factors are not to be mechanically applied but considered in a manner best calculated to facilitate the determination of the required degree of trustworthiness.

(Citation and punctuation omitted; emphasis in original.) *Phillips*, supra, 284 Ga. App. at 227 (1) (b).

Lynn argues that the videotaped statement lacked sufficient indicia of reliability because the stepdaughter was not credible, as evidenced by: (a) the fact that the stepdaughter had at one time recanted allegations of abuse she made against Lynn in 2004; (b) the fact that the stepdaughter had falsely accused Lynn of abusing her sister; and (c) the stepdaughter's demeanor during the videotaped interview. Lynn's argument regarding the victim's credibility, however, is undermined by the fact that the victim testified at trial and was subject to cross-examination about the circumstances surrounding the videotaped interview and statements she made during the same. Accordingly, "it was the jury's responsibility, as the trier of fact, to resolve any inconsistencies [in the victim's statements] and judge [her] credibility. . . ." *Daniel v. State*.[13] See also *Howard v. State*[14] ("[d]eterminations as to the credibility of a witness are a matter solely within the jury's purview and will not be disturbed on appeal").

Additionally, the record shows that the trial court did not abuse its discretion in rejecting Lynn's arguments as to the victim's credibility. As the trial judge noted during the evidentiary hearing, there was no evidence to support Lynn's assertion that his victim

---

[13] *Daniel v. State*, 296 Ga. App. 513, 516 (1) (675 SE2d 472) (2009).
[14] *Howard v. State*, 252 Ga. App. 465, 468 (1) (556 SE2d 536) (2001).

had ever recanted the allegations she made in 2004 or that she had falsely accused Lynn of molesting her sister. Although defense counsel responded that such evidence would be introduced at trial, Lynn's brief offers no record citations demonstrating that such evidence was, in fact, introduced. Moreover, our review of the victim's trial testimony shows that defense counsel never questioned her regarding her alleged recantation of the 2004 incident, even though the victim had testified about that incident on direct examination. While defense counsel did cross-examine the victim with respect to her purported allegations that Lynn had molested her sister, the victim explained that she had only stated to someone that she was afraid that Lynn might molest her sister.

The aspects of the victim's demeanor that Lynn claims demonstrated her lack of credibility included the fact that the victim hid her face behind her hair, placed her head on the table, and appeared generally reluctant to answer the interviewer's questions.[15] The trial court acknowledged these arguments at the pre-trial evidentiary hearing but found that, considering the other relevant *Gregg* factors, the videotape showed that the victim was "sufficiently credible for [the taped interview] to be shown to the jury." We agree.

The testimony of the forensic interviewer, who was qualified as an expert witness, established that the interview in question took place at a neutral location, with only the interviewer present. There was no evidence that the victim had been threatened or otherwise induced to make her statements, or that she was somehow impaired. The victim's statements during the interview were consistent with other statements she made about the incidents in question, including her trial testimony. The forensic interviewer opined that the victim's demeanor could be explained by the fact that she was embarrassed. She further testified that there was no evidence that the victim had been coached or otherwise influenced on what to say. Finally, the victim testified at trial and was subject to cross-examination. Thus, Lynn

> had every conceivable opportunity to examine and cross-examine the [victim] in the presence of the jury, regarding the [victim's] memory of and the circumstances surrounding [the interview], and had the opportunity to allow the jury to judge the [victim's] demeanor in response to any examination or cross-examination about

---

[15] In the absence of the videotape, our description of the victim's demeanor is taken from the arguments of counsel and the statements of the trial court made during the pre-trial evidentiary hearing.

176

the interview, including her conduct and the veracity of any statements she made during the same. *Gregg*, supra, 201 Ga. App. at 241 (3) (c). See also *Phillips*, supra, 284 Ga. App. at 228 (1) (b) (where victim testified at trial, defendant had "every opportunity to cross-examine her before the jury regarding the circumstances surrounding the videotaped interview, and [her testimony gave] the jury the opportunity to judge her demeanor and credibility during that examination"). In light of the foregoing, the trial court did not abuse its discretion in admitting the videotaped interview. Id. See also *Howard*, supra, 252 Ga. App. at 467-468 (1) (trial court properly admitted videotape interview where a number of *Gregg* factors showed reliability and victim testified at trial).

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED SEPTEMBER 22, 2009.

*Brandi D. Payne*, for appellant.
*Samuel H. Altman, District Attorney, Tony A. May, Adriane L. Love, Assistant District Attorneys*, for appellee.