## A09A0894. BROWN v. THE STATE.
(685 SE2d 377)

ADAMS, Judge.

Carlton Brown was tried and convicted of aggravated child molestation and aggravated sodomy involving a four-year-old girl. The court merged the two convictions. In the same trial, Brown was

---

[22] Id.

acquitted on a charge of molestation by displaying a pornographic film to an eight-year-old boy. Brown raises six enumerations of error.

Construed in favor of the verdict, the evidence shows that Brown inappropriately touched a four-year-old girl who was at his home while his wife kept the child for the child's mother. All of the evidence came in the form of statements by the child as reported by five adults. The child told her mother that "Carlton [had] touched [her]" and that his moustache hurt her when he put his mouth "down there on me." The child told an examining physician's assistant that Brown rubbed her on her genitalia and that his whiskers hurt her. She told a day care provider that "Carlton licked me down here," and she pointed to her private area. She added that his moustache and beard hurt her. The child also said that Brown had told her not to say anything. The child told an investigator similar facts, including that the babysitter was in the shower at the time. Finally, the child told a forensic interviewer essentially the same story, and that interview was recorded and played to the jury. Brown's wife testified that the only time the child was alone with her husband would be when she, Brown's wife, was in the shower, which was consistent with statements made by the child. A physical examination conducted several months later revealed no signs of sexual trauma or abuse. But the examiner testified that it was not unusual for a child not to have any signs of molestation, especially when three months had passed since the incident. Brown testified and denied the allegations.

1. Brown contends the court erred by allowing the State to bolster the credibility of the victim. Investigator Todd Hutchens testified about his past experience in social services investigating child abuse and neglect. As a part of that testimony he stated that, "my past experiences in regards to four-year-old children is that [they] just don't fabricate this type of information. They can't just make it up." Trial counsel objected, and the court gave a limiting instruction by stating, "The jury will disregard the witness' last statement in its entirety. Okay?" Defense counsel did not object or ask for further instruction. Failure to take action such as requesting further instructions or moving for a mistrial waives any error. *Fulbright v. State*, 194 Ga. App. 827, 828 (2) (392 SE2d 298) (1990); *Frazier v. State*, 247 Ga. App. 500, 502 (544 SE2d 198) (2001).

2. Brown contends the court abused its discretion by allowing into evidence the videotape of the forensic interview of the child. See *Bradford v. State*, 221 Ga. App. 232, 234 (2) (471 SE2d 248) (1996) (issues regarding admissibility of evidence lie within trial court's discretion). The court held a pre-trial hearing on the admissibility of the videotape, watched it, and announced at a break in the trial that it found the tape admissible. Defense counsel asked for and was permitted a continuing objection. The child was available to testify,

but neither side chose to call her to the stand.

The victim's statements "[are] admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability." OCGA § 24-3-16. Brown contends there were insufficient indicia of reliability about the statement because there were several inconsistencies between it and the victim's statements to the other four adults, the interviewer's repeated questions were suggestive, and there was some coaching by the mother.

Some of the factors a court may consider when determining whether an out-of-court statement has sufficient indicia of reliability include the following:

> (1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child.

*Gregg v. State*, 201 Ga. App. 238, 240 (3) (b) (411 SE2d 65) (1991). "However, these factors are not to be mechanically applied but considered in a manner best calculated to facilitate the determination of the required degree of trustworthiness." (Punctuation omitted.) *Phillips v. State*, 284 Ga. App. 224, 227 (1) (b) (644 SE2d 153) (2007). Finally, "even if all factors do not indicate reliability, the trial court does not necessarily abuse its discretion in admitting the statement." *Woolums v. State*, 247 Ga. App. 306, 307 (1) (540 SE2d 655) (2000).

Our review of the videotape supports the trial court's decision. The interviewer spent considerable time trying to develop a rapport with the child. There were no threats nor promises of benefits for the child's answers. The child's general demeanor was responsive to the questions. The questions were open-ended. Furthermore, the interviewer testified that she followed the most widely used forensic interview technique in the country. It is designed to ensure that the

interview is conducted in a nonthreatening, child-friendly environment.

Although there were some inconsistencies between the child's various statements, there were also consistencies between her answers and the babysitter's statement and with her own statements to other witnesses, such as that Brown had licked her private parts and that the babysitter had been in the shower.

The interviewer did repeatedly ask about whether the child's clothes were on or off during the incident, but it was apparent that she did so because the child gave conflicting information. But the interviewer's questions were not suggestive of the answer. The interviewer also explained that her training included instruction to repeat questions in several ways in order to show consistency or inconsistency in the child's statements. Indeed, one of the child's clarifications about Brown's behavior worked in Brown's favor.

With regard to the alleged coaching by the mother, the record shows that the mother was in the room at the time of the interview and that during a break, when the interviewer was out of the room, the mother asked the child, "Why didn't you tell her how this happened?" The child then made a licking motion with her tongue. But the videotape shows that the child's first statement that Brown had licked her was spontaneous and it preceded the time that the mother was alone with the child.

Considering the circumstances of the interview as a whole, we cannot conclude that the trial court abused its discretion by allowing the video to be played to the jury. See generally *Krirat v. State*, 286 Ga. App. 650, 655-656 (2) (649 SE2d 786) (2007) (despite some contradictions between victims' statements, sufficient indicia of reliability found).

3. Brown failed to object to the State introducing evidence of bad character, and therefore any error was waived. *Harrison v. State*, 213 Ga. App. 366, 367 (1) (444 SE2d 613) (1994) (objections not raised at trial are waived).

4. Brown failed to request that Count 3 be severed from the other two counts for trial, which waived that issue. *Allen v. State*, 273 Ga. App. 227, 230 (2) (b) (614 SE2d 857) (2005).

5. Brown failed to object to certain rebuttal evidence referenced in his fifth enumeration of error, which results in waiver. *Harrison*, 213 Ga. App. at 367 (1).

6. Brown contends his trial counsel was ineffective in several ways. To show ineffective assistance, a criminal defendant must show both that his counsel's performance was deficient, and but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

(a) Brown asserts that his counsel was ineffective by failing to renew a motion for mistrial after the court gave the curative instructions as shown in Division 1. At the hearing on the motion for new trial, trial counsel testified that he chose not to renew the motion because he did not want to draw attention to what the witness had just said. Thus his decision was a matter of trial strategy; and a corresponding finding of effective assistance will not be disturbed unless the "decisions are so patently unreasonable that no competent attorney would have chosen them." *Cherry v. State*, 283 Ga. App. 700, 701 (1) (a) (642 SE2d 369) (2007). We find no such patently unreasonable decision here.

(b) Brown contends his trial counsel should have objected when the State questioned him about whether his wife had ever locked herself in the bathroom to let Brown's "violence and temper settle down before she could come out of the bathroom for safety?" But counsel explained that he did not object because Brown had opened the door to character testimony. And the transcript of the trial shows that Brown had just testified that he was good with children. Again, the testimony shows that counsel's decision was tactical.

(c) Brown contends his counsel should have filed a motion to sever Count 3, which charged Brown with child molestation in that he "displayed a pornographic film to minor child [J. K.] . . . with intent to arouse the sexual desires of said accused. . . ." Even though Brown obtained a directed verdict on this count, Brown argues that failing to sever allowed the State to introduce prejudicial evidence that would have otherwise been inadmissible during a trial on the first two counts. At the motion for new trial hearing, defense counsel testified that he did not think about severance and he did not interview the alleged victim of Count 3. And he admitted that he thought that as long as Count 3 was in the case, the evidence would be admitted into evidence. But just because counsel did not think about a motion to sever does not mean that he should have made such a motion.

Trial counsel should have moved for severance if he thought that he had a basis to succeed and thereby preclude admission of the Count 3 evidence in the separate trial of Counts 1 and 2. Under Georgia law, the evidence related to Count 3 would have been admissible in a separate trial of Counts 1 and 2 if it showed that Brown intended for the boy to see the pornographic images, because the evidence would tend to show that Brown had the bent of mind to seek sexual arousal by displaying pornographic materials to a child and a trial court would not abuse its discretion by admitting such evidence as showing defendant's bent of mind to seek sexual arousal

from another child.[1]

But, as stated above, trial counsel had not interviewed the boy prior to trial and therefore did not know whether the boy would testify in a way that would negate criminal intent on Brown's part. Failing to interview the boy may not reflect sound practice. But in Brown's claim for ineffective assistance, he must show that had counsel interviewed the boy, the boy would have negated Brown's criminal intent thereby providing a basis for the motion to sever. This Brown has failed to do. At the hearing on the motion for new trial, he did not establish any facts such as that the boy may have inadvertently and without warning interrupted Brown while he was watching pornographic films, nor otherwise show that Brown had no intent to show the films to the child. Thus, Brown has not shown that trial counsel had a basis to exclude the information from a severed trial on Counts 1 and 2.

It is not enough that Brown was granted a directed verdict on this point because the boy never testified directly or indirectly about what led him to be in the shed with Brown; the simple fact that a verdict was directed on this point does not mean that the boy would have told Brown's counsel before trial information that exonerated Brown. Accordingly, Brown has not shown trial counsel had a basis to move to sever the charges in order to preclude admission of the Count 3 evidence in a separate trial on Counts 1 and 2.

(d) Finally, Brown contends his counsel was ineffective because he failed to object to the introduction of certain rebuttal evidence. Brown testified in his own defense and specifically testified about being questioned about the incident by Detective Hutchens, including that he talked to Hutchens because he "had nothing to hide." On cross-examination, the prosecutor asked Brown what he said when Hutchens first informed him that the victim stated that Brown had done something to her. When Brown said he did not remember, the prosecutor asked, "Do you remember saying, 'All I've ever done is get down and tie her shoelaces, sir. I swear.' Do you remember saying that?" In response, Brown gave a lengthy and nonresponsive statement about the events of the day of the incident. When further questioned about the statement, Brown testified, "That's not what I said." In rebuttal, the State recalled Hutchens to the stand; he had not testified about this statement during the State's case-in-chief.

---

[1] See generally *Newton v. State*, 296 Ga. App. 332, 337 (3) (674 SE2d 379) (2009) (pornographic magazines admissible to show bent of mind to commit child molestation where defendant looked at them while he was in the same room as the child victim on the same day that he molested the child); *Ferrell v. State*, 256 Ga. App. 692, 695 (2) (569 SE2d 899) (2002) (evidence that defendant masturbated in the presence of other children was admissible in connection with charges that defendant molested seven-year-old girl).

On rebuttal, he testified that Brown had made the purported statement.

Brown contends his counsel should have objected to the rebuttal evidence on the grounds that there was no legitimate purpose for the evidence and that there was no prior determination that the prior custodial statement was voluntary. On the first point, Hutchens contends that the evidence was not rebuttal evidence but instead was a fact that the State wanted to prove but failed to do so in its case-in-chief.[2] But Brown had already testified about having a conversation with Hutchens and asserted that he did so because he had nothing to hide. And there was no objection to the prosecution's question about what he had said to Hutchens. When Hutchens eventually stated that he had not made the purported statement, this opened the door to impeachment. Thus, the evidence was offered for a legitimate purpose. See OCGA § 24-9-82.

Second, because it was offered for the legitimate purpose of impeachment, no *Jackson-Denno* hearing was required before admitting the statement. *Robles v. State*, 277 Ga. 415, 420 (7) (589 SE2d 566) (2003). And Brown did not question trial counsel at the hearing on the motion for new trial about his failure to object to allowing the questioning without a showing that the statement was voluntary; therefore, he has not rebutted the presumption that any such decision was strategic.

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED OCTOBER 7, 2009.

*Peter D. Johnson*, for appellant.

*Richard A. Mallard, District Attorney, W. Scott Brannen, Assistant District Attorney*, for appellee.

---

[2] Even if true, "'whether the State should be permitted to introduce . . . evidence after the defendant has closed his testimony, even if it was not strictly in rebuttal, is a matter resting in the sound discretion of the court.' [Cit.]" (Punctuation omitted.) *Smith v. State*, 260 Ga. 746, 748 (1) (399 SE2d 66) (1991). And given that the rebuttal evidence contradicted Brown's testimony, Brown has not shown that its admission would have been a "gross and palpable" breach of that discretion. See *Woodward v. State*, 197 Ga. 60, 69 (7) (28 SE2d 480) (1943).