727 S.E.2d 504 (2012)
315 Ga. App. 679
ANDERSON
v.
The STATE.
No. A12A0306.
Court of Appeals of Georgia.
April 19, 2012.
*506 Patricia Margaret Moon, for Anderson.
Richard Randolph Read, Roberta A. Earnhardt, Conyers, for the State.
MIKELL, Presiding Judge.
Based on acts of sodomy committed against J.A., his adopted daughter, James Karl Anderson was found guilty by a jury of three counts of aggravated child molestation[1] and was acquitted of one count of child molestation. Pursuant to OCGA § 17-10-6.1, he was sentenced on each aggravated child molestation count to life in prison, with 25 years to serve on each count, consecutively, and the balance on probation. After hearings, Anderson's amended motion for new trial was denied. He appeals, challenging the sufficiency of the evidence and enumerating other errors. We affirm.
On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence. This Court does not weigh the evidence or determine witness credibility, but only determines whether the evidence, viewed in the light most favorable to the jury's verdict, is sufficient under Jackson v. Virginia.[2] We uphold the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3]
Properly viewed, the evidence adduced at trial showed the following. Anderson had married the mother of the victim and had adopted the victim, J.A., when she was small. J.A.'s mother testified that "[s]o far as [J.A.] was concerned, he's pretty well been her father." At some point, Anderson moved out of his wife's bedroom and into the bonus room in the family home; later, in May 2007, the month J.A. turned nine years old, Anderson moved out of the family home altogether and into his own apartment. Thereafter, on occasions when her mother had to work at night, J.A. and her younger sister, who was developmentally challenged, would from time to time spend the night with Anderson at his apartment.
J.A. was eleven years old and in sixth grade at the time of the August 2009 trial. She testified that the last time she stayed overnight at her father's apartment, he woke her up as she was sleeping on the couch. He was naked and he told her to take her clothes off. When she refused, he got mad, pulled her clothes off, and told her to suck his penis. When she resisted, he pushed her head toward his penis and forced her to comply. He then "put his penis in [her] butt," while moving "back and forth." She testified that "it hurt really bad"; that she told him to stop; and that she was crying. He "kept switching back and forth" between forcing her to engage in oral sex and forcing her to engage in anal sex. He pulled a packet with writing on it from under the couch, and she felt "some stuff, something greasy" on her behind. This episode occurred when J.A. was ten years old, two or three weeks before J.A.'s recorded interview with a police investigator on October 17, 2008.
J.A. further testified that Anderson had forced her to engage in oral and anal sex on earlier occasions, although she could not remember how many times; and that the abuse began when she was in the third grade. The abuse took place first at her home and, later, at Anderson's apartment.
On October 16, 2008, J.A., who was "sick and tired" of the abuse, made outcry to her mother. J.A. told her mother that she did not want to spend the night at her dad's *507 apartment. When her mother asked why, J.A. told her that her father sometimes put his penis "in her mouth and also in her butt"; and that the abuse had occurred both at her home and at Anderson's apartment.
The next morning, October 17, 2008, her mother called the police and took J.A. to the Rockdale County Sheriff's Office, where J.A. was interviewed by Jennifer Perry, a P.O.S.T.-certified investigator with the Criminal Investigation Division of the Rockdale County Sheriff's Department. Perry testified for the state at trial. The recording of the interview was admitted into evidence without objection and was played for the jury.
In this interview, J.A. graphically described the abuse she had suffered for the two years prior to October, 2003, in a manner consistent with her later testimony at trial. J.A. explained that, when the abuse began, Anderson would make J.A. put her mouth on his penis. On occasion, including the last time J.A. stayed at Anderson's apartment overnight two weeks earlier, Anderson made J.A. suck his penis while he was licking her vagina. J.A. called this "disgusting." J.A. told Perry that Anderson would not stop until "stuff" came out of his penis, which he always made her swallow. He told her that it would help her skin.
In February 2007, more than a year before her October 2008 interview with Perry, J.A., then eight years old, had made her first outcry of sexual abuse against her father. The outcry was reported to authorities, and two separate investigations were begun. The investigations were closed, however, when J.A. recanted in March 2007. Later, at the August 2009 trial, J.A. explained that her 2007 accusation against her father "was the truth, but [she] said it was a lie to keep the family together"; and that she recanted the accusation "[b]ecause I felt like I wanted to keep my relationship with my father and I didn't want to break the family apart." This testimony was consistent with her statements to Perry in the October 2008 recorded interview. At that time, J.A. told Perry that she had recanted her 2007 accusation because Anderson "played the guilt trip on [her] and he was mad"; and she "did not want to be the bad guy."
Anderson testified at trial and denied the charges against him. He called several witnesses, including investigators of J.A.'s 2007 outcry, as well as a childhood friend who testified as a character witness. At the conclusion of the trial, the jury found Anderson guilty of three counts of aggravated child molestation. His amended motion for new trial was denied, and this appeal followed.
1. In his first enumeration of error, Anderson contends that the evidence was insufficient to support his convictions for aggravated child molestation. We disagree.
A person commits child molestation when he "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[4] Aggravated child molestation occurs when a person "commits an offense of child molestation which act physically injures the child or involves an act of sodomy."[5] The testimony of J.A., standing alone, was sufficient to support the verdict;[6] and the jury was entitled to consider the victim's out-of-court statements, such as those made in the October 2008 police interview, as substantive evidence under the Child Hearsay Statute, OCGA § 24-3-16.[7] Accordingly, we conclude that any rational trier of fact could have found Anderson guilty beyond a reasonable doubt of the three counts of aggravated child molestation with which he was charged.[8]
*508 Anderson argues that the evidence was insufficient because there was no physical evidence of abuse. However, the victim's testimony, alone, supports his convictions, despite the absence of any physical evidence, because "Georgia law does not require corroboration of a child molestation victim's testimony."[9] Anderson further points to inconsistencies between J.A.'s in-court testimony and her recorded October 2008 police interview, as well as her earlier recantation of her 2007 outcry. But "any inconsistencies between the victim's trial testimony and her out-of-court statements were issues of witness credibility that were solely within the province of the jury and play no part in this Court's sufficiency of the evidence review."[10] On appellate review, "we determine only the legal sufficiency of the evidence adduced below and do not weigh the evidence or assess the credibility of the witnesses."[11] Thus, "[a]s long as there is some evidence, even though contradicted, to support each necessary element of the [s]tate's case, the verdict will be upheld."[12]
2. Anderson asserts that the recording of the October 2008 interview of J.A. should have been excluded from evidence, because it lacked sufficient indicia of reliability. Under the Child Hearsay Statute, OCGA § 24-3-16, the victim's out-of-court statements are "admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability." In this case, following a pre-trial hearing, the trial court ruled that this recording showed "sufficient indicia of reliability" and was admissible under OCGA § 24-3-16. "The trial court has broad discretion in determining the admissibility of child hearsay evidence, and we will reverse a trial court's ruling on the admissibility of statements under OCGA § 24-3-16 only if the trial court abused its discretion."[13] We find no abuse of discretion here.
When determining whether an out-of-court statement has sufficient indicia of reliability, a court may consider the following factors, without limitation:
(1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and[] the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child.[14]
These factors, however, "are not to be mechanically applied but considered in a manner best calculated to facilitate the determination of the required degree of trustworthiness."[15] Moreover, "even if all factors do not indicate reliability, the trial *509 court does not necessarily abuse its discretion in admitting the statement."[16]
Here, Perry testified that the interview took place in a "children friendly" room at the sheriff's office, outside the presence of J.A.'s mother, thus avoiding any undue influence.[17] J.A. was ten years old at the time of the interview; the interview resulted from J.A.'s spontaneous outcry to her mother the day before; and there was no evidence of coercion or coaching. The most recent episode of abuse had taken place only "two or three" weeks before the interview. Perry testified that at first J.A. seemed nervous, but later she was "very detailed." J.A. appeared to understand Perry's questions, and her responses to Perry's questions seem unrehearsed and spontaneous, contrary to Anderson's contention. J.A. did not appear to be in any physical or emotional distress; there was no evidence that J.A. received either threats or promises; and, to Perry's experienced eye, J.A. did not appear to be under the influence of drugs or alcohol. Perry further testified that, prior to the interview, she had spoken with J.A.'s mother; and that J.A.'s statements in the interview were consistent with the statements J.A. had made to her mother.
J.A. admitted in the interview that she had lied in recanting her 2007 accusations, and she explained why she had done so. Any inconsistencies in her statements to her schoolmates, her 2007 outcry, her interview statements, and her testimony at trial had chiefly to do with the amount of detail she provided. These minor inconsistencies were issues going to the weight and credibility of the evidence, not its admissibility.[18]
Further, J.A. testified as a witness at trial and was subject to cross-examination, "thus allowing [Anderson] every opportunity to cross-examine her before the jury regarding the circumstances surrounding the videotaped interview, and giving the jury the opportunity to judge her demeanor and credibility during that examination."[19] As this Court has explained, "This circumstance provided an additional safeguard to [Anderson's] right of fair trial and provided him full opportunity for confrontation."[20] We conclude that the trial court did not abuse its discretion in admitting the recording of the victim's October 2008 interview.
3. Anderson asserts that, because the recording of the October 2008 interview lacked sufficient indicia of reliability, the trial court erred in permitting the recording to be replayed in court at the jury's request during its deliberations. This enumeration fails. We determined in Division 2 above that J.A.'s interview provided sufficient indicia of reliability and was therefore admissible under OCGA § 24-3-16. Further, because the replay of the interview occurred under essentially the same circumstances and with essentially the same cautionary jury charge as that found appropriate in Lopez,[21] the trial court did not abuse its discretion in allowing the interview to be replayed for the jury during its deliberations.
4. In two enumerations of error, Anderson contends that the trial court erred in allowing J.A.'s schoolmates, D.P. and E.E., to testify as to J.A.'s outcry statements to them. Anderson argues that the circumstances of the statements made by J.A. to these two outcry witnesses lacked "sufficient indicia of reliability" as required by the Child *510 Hearsay Statute, OCGA § 24-3-16. However, Anderson has not preserved these alleged errors for appellate review. At the pretrial hearing, the trial court addressed Anderson's motion in limine only as to the October 2008 interview; and Anderson made no effort to address the reliability of the testimony of these two outcry witnesses, even though the state noted that they would be called as witnesses at trial. Anderson neither sought nor obtained any pre-trial ruling as to the admissibility of testimony of these witnesses; nor did Anderson object at trial to the testimony of either D.P. or E.E., on this or any other ground. Anderson asserts in his brief that these alleged errors were preserved for appellate review, but he has provided no citation to the record; and our review of the record has not shown that these alleged errors were preserved. Because Anderson "failed to object to the introduction of any of this evidence[,] his claim that the evidence was improperly admitted pursuant to the Child Hearsay Statute was not preserved for appellate review."[22]
5. Anderson contends that the trial court erred in admitting into evidence certain items found during the execution of a search warrant at his apartment. We find no error.
On October 16, 2008, when J.A. told her mother of Anderson's abuse, the mother, shocked and angry, immediately went over to Anderson's apartment to confront him. She testified that, when she told him that J.A. had disclosed his abuse, he "blew up." The next day, after interviewing J.A., Perry and deputies from the Rockdale County Sheriff's Office executed a search warrant on Anderson's apartment. There, they found Anderson on the floor of a bathroom closet, unresponsive and lying face down in his own bodily fluids. An ambulance was called for him. On the floor of the closet, deputies found an almost-empty bottle of vodka near Anderson's head and a fully-loaded 9 millimeter handgun between his knee and foot. This weapon and its ammunition were admitted into evidence at trial without objection.
The deputies also found, on Anderson's kitchen table, an envelope containing ten Falcons tickets and a white index card on which was written, in Anderson's handwriting, "ED U HAVE BEEN A TRUE FRIEND .... ALL MY FALCONS STUFF IS YOURS `LOVE AJ' [signature] 10-17-08." On the outside of the envelope was written, again in Anderson's handwriting, the name "Ed Blunt," one of Anderson's friends. After the pretrial hearing on Anderson's in limine motion, the trial court determined that these items were admissible as evidence of consciousness of guilt.
Anderson asserts that the probative value of this evidence was outweighed by its prejudicial effect. However, it was for the trial court to exercise its discretion in determining the admissibility of evidence as showing consciousness of guilt.[23] We find no abuse of discretion here.
In general, any statement or conduct of the accused tending to show consciousness of guilt is admissible in Georgia.[24] In Aldridge,[25] this Court addressed for the first time the question of whether attempted suicide would be admissible as conduct indicating a consciousness of guilt.[26] We concluded that such evidence would be admissible: "evidence of attempted suicide by the accused where such person is, at the time or thereafter, charged with or suspected of crime, is relevant as possibly indicating a consciousness of guilt and admissible for whatever weight the jury chooses to assign."[27] Here, the record shows that, on the afternoon of the day after Anderson's wife told him that J.A. had revealed the abuse, he was found in a drunken stupor on the floor of *511 a small closet; his handgun was found within arm's reach; and the handgun was fully loaded. Whether the note and Falcons tickets, in conjunction with the foregoing, were evidence of a contemplated suicide attempt and were indicative of consciousness of guilt, or whether these items had an innocent explanation, was a question for the jury.[28]
Judgment affirmed.
MILLER and BLACKWELL, JJ., concur.
NOTES
[1] The indictment charged Anderson with committing aggravated child molestation between January 1, 2007, and October 9, 2008, by commanding the victim to place her mouth on his penis; by placing his mouth on the victim's vaginal area; and by placing his penis in and on the victim's anus.
[2] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[3] (Footnote omitted.) Whitaker v. State, 293 Ga. App. 427, 667 S.E.2d 202 (2008). Accord Harvey v. State, 295 Ga.App. 458, 671 S.E.2d 924 (2009).
[4] OCGA § 16-6-4(a)(1).
[5] OCGA § 16-6-4(c). OCGA § 16-6-2(a)(1) provides that "[a] person commits the offense of sodomy when he or she performs ... any sexual act involving the sex organs of one person and the mouth or anus of another."
[6] See OCGA § 24-4-8; Cobb v. State, 309 Ga. App. 70, 73(1), 709 S.E.2d 9 (2011) (victim's testimony, standing alone, was sufficient to support conviction for child molestation).
[7] See Manders v. State, 281 Ga.App. 786, 788(1), 637 S.E.2d 460 (2006). Accord Lamb v. State, 293 Ga.App. 65, 66, 666 S.E.2d 462 (2008).
[8] See Jackson, supra. See OCGA § 16-6-4(c); Woods v. State, 304 Ga.App. 403, 405(1), 696 S.E.2d 411 (2010).
[9] (Punctuation and footnote omitted,) Barnes v. State, 299 Ga.App. 253, 254(1), 682 S.E.2d 359 (2009).
[10] (Citation and punctuation omitted.) Lopez v. State, 291 Ga.App. 210, 212(1), 661 S.E.2d 618 (2008).
[11] (Punctuation and footnote omitted.) Foster v. State, 286 Ga.App. 250, 252(1), 649 S.E.2d 322 (2007).
[12] (Citation and punctuation omitted.) Phillips v. State, 284 Ga.App. 683, 684(1)(a), 644 S.E.2d 535 (2007).
[13] (Citation and punctuation omitted.) Phillips v. State, 284 Ga.App. 224, 227(1)(b), 644 S.E.2d 153 (2007). Accord Barclay v. State, 306 Ga. App. 766, 767(1), 702 S.E.2d 907 (2010).
[14] Brown v. State, 300 Ga.App. 359, 361(2), 685 S.E.2d 377 (2009), citing Gregg v. State, 201 Ga.App. 238, 240(3)(b), 411 S.E.2d 65 (1991).
[15] (Citation and punctuation omitted.) Brown, supra.
[16] Woolums v. State, 247 Ga.App. 306, 307(1), 540 S.E.2d 655 (2000). Accord Krirat v. State, 286 Ga.App. 650, 656(2), 649 S.E.2d 786 (2007).
[17] See Phillips, supra, 284 Ga.App. at 228(1)(b), 644 S.E.2d 153. See also Krirat, supra (parents' presence during victims' statements was not reversible error, although court notes that better practice would be to conduct victim interviews outside parents' presence).
[18] See Kight v. State, 242 Ga.App. 13, 16(1), 528 S.E.2d 542 (2000). Accord Nelson v. State, 279 Ga.App. 859, 862(1)(a), 632 S.E.2d 749 (2006).
[19] (Citation omitted.) Phillips, supra, 284 Ga. App. at 228(1)(b), 644 S.E.2d 153. Accord Hughes v. State, 297 Ga.App. 581, 584(2), 677 S.E.2d 674 (2009).
[20] (Punctuation omitted.) Hughes, supra, citing Phillips, supra, 284 Ga.App. at 228(1)(b), 644 S.E.2d 153.
[21] Supra at 213-214(3), 661 S.E.2d 618.
[22] (Footnote omitted.) Romani v. State, 303 Ga. App. 829, 830(1), 695 S.E.2d 303 (2010).
[23] Nguyen v. State, 273 Ga. 389, 398(3), 543 S.E.2d 5 (2001) (trial court did not abuse discretion in admitting evidence of defendant's attempt to influence witness's testimony as showing consciousness of guilt).
[24] Aldridge v. State, 229 Ga.App. 544(1), 494 S.E.2d 368 (1997), citing Bridges v. State, 246 Ga. 323, 324(2), 271 S.E.2d 471 (1980).
[25] Supra.
[26] Id. at 544-545(1), 494 S.E.2d 368.
[27] (Citations and punctuation omitted.) Id. at 545(1), 494 S.E.2d 368.
[28] See id.